**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 20-cv-00877-RBJ-NYW

JOSEPH SMITH,

     Plaintiff,

v.

LT. A. TRUJILLO,
GONZALEZ, S.I.S. TECHNICIAN, and
UNITED STATES OF AMERICA,

     Defendants.

---

## ORDER ON DISCOVERY MOTIONS

---

Magistrate Judge Nina Y. Wang

     This matter is before the court on three Motions filed by Plaintiff Joseph Smith ("Plaintiff" or "Mr. Smith"): the Motion for Order Overruling Objections to Request for Production (Fed. R. Civ. P. 37(a)) (the "Motion to Compel") [Doc. 139, filed January 3, 2022]; the Motion for Leave to Take Deposition (Fed. R. Civ. P. 30(a)(2)(B) (the "Motion to Take Depositions") [Doc. 141, filed January 3, 2022]; and the Motion for Extension of Time [Doc. 156, filed February 22, 2022] (collectively, the "Motions").  The court considers the Motions pursuant to 28 U.S.C. § 636(b), the Order Referring Case dated October 19, 2020 [Doc. 48], and the Memoranda dated January 4, 2022 [Doc. 143] and February 23, 2022 [Doc. 157].  This court concludes that oral argument will not materially assist in the resolution of these matters.  Upon review of the Motions, the related briefing, and the applicable case law, the Motion to Compel is **GRANTED in part** and **DENIED in part**; the Motion to Take Depositions is **DENIED without prejudice**; and the Motion for Extension of Time is **DENIED**.

## BACKGROUND

The court has previously discussed the factual background of this case in detail, *see* [Doc. 89], and will do so again here only as necessary for purposes of the instant Motions.  Mr. Smith is currently incarcerated within the Federal Bureau of Prisons ("BOP") at United States Penitentiary, Thomson ("USP Thomson") located in Thomson, Illinois.  *See* [Doc. 120 at 1].  Mr. Smith was previously housed at the BOP's Federal Correctional Institution Florence ("USP Florence").  [Doc. 21 at 3].  Mr. Smith alleges that while he was house at USP Florence, he was subjected to the excessive use of force by Defendants Trujillo, Gonzalez,[1] and an unidentified correctional officer.  [*Id.* at 7-9].  Mr. Smith asserts that he thereafter received inadequate medical care from BOP officials, and that when he filed a BOP grievance complaining of such subpar care, Defendant Dr. Pelton ("Dr. Pelton") retaliated against Plaintiff by canceling his MRI appointment.  [*Id.* at 10-15].

Plaintiff initiated this action on March 30, 2020.  [Doc. 1].  Following orders from the Honorable Gordon P. Gallagher, Plaintiff filed an Amended Prisoner Complaint on April 29, 2020 and a Second Amended Prisoner Complaint on May 26, 2020.  *See* [Doc. 5; Doc. 12; Doc. 14; Doc. 15; Doc. 21].  The Second Amended Complaint alleged a host of constitutional claims pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 396-97 (1971) as well as a Federal Torts Claim Act ("FTCA") claim against the United States. *See generally* [Doc. 21].  On June 3, 2020, Judge Gallagher recommended that the court dismiss several of Plaintiff's purported *Bivens* claims against several individual defendants, but draw Plaintiff's (1) Eighth Amendment excessive force claim against Defendants Trujillo, Gonzalez,

---

[1] The court notes that Defendants spell this Defendant's name as both "Gonzalez" and "Gonzales." *See* [Doc. 149 at 1; Doc. 150 at 1].  Defendants have not indicated that Mr. Smith's spelling of Defendant Gonzalez's name in the Second Amended Complaint is incorrect, *see* [Doc. 21 at 1], and thus, the court uses the spelling offered by Plaintiff.

and an unidentified USP Florence officer ("Claim One"), (2) Eighth Amendment deliberate indifference claim against Dr. Pelton ("Claim Two"), and (3) FTCA claim against the United States ("Claim Three") to a presiding judge. [Doc. 25]. The Honorable Lewis T. Babcock adopted the Recommendation and drew Plaintiff's three remaining claims to the undersigned, [Doc. 28], but upon the Parties' non-consent, the Clerk of the Court redrew this matter to the Honorable R. Brooke Jackson, who has since referred certain pretrial matters back to the undersigned. *See* [Doc. 47; Doc. 48].

On October 23, 2020, Defendants filed a Motion for Dismissal in Part (the "Motion to Dismiss"), [Doc. 49], which was referred to the undersigned for recommendation. [Doc. 51]. In the Motion to Dismiss, Defendants moved the court to dismiss Claims Two and Three for failure to state a claim under Rule 12(b)(6) and moved for dismissal of Claim One against Defendants Trujillo and Gonzalez for lack of a *Bivens* remedy. *See generally* [Doc. 49]. On March 26, 2021, this court issued its Recommendation of United States Magistrate Judge, recommending that the Motion to Dismiss be granted in part and denied in part. [Doc. 89 at 26]. Specifically, this court recommended that Claim Two be dismissed for failure to state a claim, [*id.* at 21], and that Claim Three, insofar as it was directed to the alleged medical negligence, be dismissed for failure to file a certificate of review, as required under Colo. Rev. Stat. § 13-20-602(1)(a), *see* [*id.* at 25]. The court also recommended, however, that the Motion to Dismiss be denied as to Claim One, finding that a *Bivens* remedy exists for Plaintiff's excessive force claim. [*Id.* at 16]. The presiding judge accepted and adopted the Recommendation, and thus, Plaintiff's Claim One and Claim Three (to the extent it challenges the alleged assault) remain. *See* [Doc. 106].[2]

---

[2] Thus, Mr. Smith's claim against Dr. Pelton was dismissed with prejudice. [Doc. 106 at 8]. Accordingly, the Clerk of Court is **DIRECTED** to amend the case caption to reflect that Dr. Pelton was dismissed as a defendant in this case as of April 26, 2021.

This court held a Status Conference on May 11, 2021, at which time the court set discovery deadlines in this case.  [Doc. 109].  After Plaintiff filed a Motion for Enlargement of Time, [Doc. 132], which Defendants did not oppose, *see* [Doc. 144 at 1], the current case deadlines are as follows: affirmative expert designations are due April 5, 2022; rebuttal expert designations are due May 5, 2022; written discovery closes on April 15, 2022; discovery closes on June 6, 2022; and dispositive motions are due July 8, 2022.  [*Id.* at 1-2].

Due to a number of filings over the past several months, *see*, *e.g.*, [Doc. 140; Doc. 142; Doc. 151], it is apparent that the Parties are currently engaging in written discovery.  Relatedly, on January 3, 2022, Plaintiff filed the instant Motions.  In the Motion to Compel, Plaintiff seeks a court order "overruling the objections filed by Trujillo et al to certain requests to produce documents, materials, or things that were served on them, and compelling them to produce and permit inspection and copying of these documents, materials, or things."  [Doc. 139 at 1]. Additionally, in the Motion to Take Depositions, Mr. Smith seeks "leave to depose Antonio Dovine, John Small, and Edward Washington on or before January 17, 18, 19, 2022, respectively, at 8:00 A.M., at an appropriate location at the federal correctional facility where each deponent is located." [Doc. 141 at 1].

Defendants responded to the Motion to Take Depositions on January 25, 2022, *see* [Doc. 149], and after moving for an extension of time, responded to the Motion to Compel on December 31, 2022.  [Doc. 145; Doc. 150].  Plaintiff's deadline to reply to the Motion to Take Depositions was February 7, 2022, and his deadline to reply to the Motion to Compel was February 14, 2022. *See* D.C.COLO.LCivR 7.1(d) ("The moving party may file a reply no later than 14 days after the date of service of the response."); *see also* D.C.COLO.LCivR 5.1(d) ("The time to respond or reply shall be calculated from the date of electronic service.").  On February 22, 2022, Plaintiff

4

filed a Motion for Extension of Time, seeking an extension of time to reply to each pending Motion. [Doc. 156]. As discussed further below, on February 22, 2022, the Clerk of the Court received a letter from Mr. Smith inquiring about the cost of depositions. [Doc. 160]. The court finds that it may rule on the pending Motions with a reply from Plaintiff, and finds that it is in the interest of judicial economy to do so. *See* D.C.COLO.LCivR 7.1(d) ("The moving party may file a reply no later than 14 days after the date of service of the response. . . . Nothing in this rule precludes a judicial officer from ruling on a motion at any time after it is filed."). Because the Motions are ripe for disposition, I consider the Parties' arguments below.

## LEGAL STANDARDS

### I.      Rule 26(b)(1)

Rule 26(b)(1) of the Federal Rules of Civil Procedure defines the scope of permissible discovery in this action. Fed. R. Civ. P. 26(b)(1). The Rule permits discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. *Id.* The applicable test is whether the evidence sought is relevant to any party's claim or defense and proportional to the needs of the case. *Id.* Rule 401 of the Federal Rules of Evidence defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." Fed. R. Evid. 401. In defining the scope of appropriate discovery, the Parties and the court are directed to consider the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1).

## II.     Rules 34 and 36

Rule 34(a) allows a party to seek production of documents and things from another so long as the requested items are within the scope of discovery as defined by Rule 26(b).  Fed. R. Civ. P. 34(a).  Responses are ordinarily due within 30 days of service of the request for production and,

> [f]or each item or category, the response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons.  The responding party may state that it will produce copies of documents or of electronically stored information instead of permitting inspection.  The production must then be completed no later than the time for inspection specified in the request or another reasonable time specified in the response.

Fed. R. Civ. P. 34(b)(2)(B).  Moreover, Rule 36 permits a party to serve written requests to admit "the truth of any matters within the scope of Rule 26(b)(1) relating to: (A) facts, the application of law to fact, or opinions about either; and (B) the genuineness of any described documents."  Fed. R. Civ. P. 36(a)(1)(A)-(B).  Responses are due within 30 days of service of the requests, and if a matter is not admitted, "the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it."  Fed. R. Civ. P. 36(a)(3), (4).

## III.     Rule 37

Rule 37(a) provides that a party may move for an order compelling disclosure or discovery where a party has not disclosed any information or has disclosed evasive or incomplete answer to discovery.  Fed. R. Civ. P. 37(a).  "The party moving to compel discovery must prove that the opposing party's answers are incomplete[,]" and the "party objecting to discovery must establish that the requested discovery does not fall under the scope of relevance as defined in Rule 26(b)(1)." Ultimately, "[t]he administration of the rule[ ] lies necessarily within the province of the trial court with power to fashion such orders [as] may be deemed proper to vouchsafe full discovery for the

just, speedy and inexpensive determination of the lawsuit." *Robison v. Transamerica Ins. Co.*, 368 F.2d 37, 39 (10th Cir. 1966).

## IV.    Rule 30

Rule 30 of the Federal Rules of Civil Procedure requires that a party seeking to take a deposition obtain leave of court if the requested deponent is confined in prison. *See* Fed. R. Civ. P. 30(a)(2)(B). The Federal Rules require that "the court must grant leave to the extent consistent with Rule 26(b)(1) and (2)," i.e., the court must determine whether (1) the requested discovery is relevant and proportional to the needs of the case, *see* Fed. R. Civ. P. 26(b)(1), and (2) the frequency and extent of the requested discovery is reasonable, or whether it is unreasonably cumulative or duplicative, could be obtained from some other source that is more convenient, less burdensome, or less expensive, or the requested discovery is outside the scope of Rule 26(b)(1). *See* Fed. R. Civ. P. 26(b)(2).

## ANALYSIS

## I.    The Motion to Compel

In the Motion to Compel, Mr. Smith requests a court order compelling Defendants to produce certain documents or items requested by Plaintiff in his Requests for Production and to admit certain statements proffered in Plaintiff's Requests for Admission. *See* [Doc. 139]. Defendants generally contend that "many of the written discovery requests at issue seek information that is outside of the scope of" Rule 26(b)(1), but to the extent the requests are both relevant and proportional to this case, Defendants state that they have responded as required under the Federal Rules. [Doc. 150 at 2].

A.      **Plaintiff's Discovery Requests**

Plaintiff filed a copy of his Requests for Production [Doc. 119] and his Requests for Admission [Doc. 118] on June 28, 2021.  With respect to the production of documents, Plaintiff submitted the following requests to Defendants:

> REQUEST No. 1.  Any and all recordings of any telephone calls and radio transmissions made and/or received by defendants Trujillo, Gonzalez, unidentified correctional officers and any other party relating to any and all use of force incidents involving Plaintiff.

> REQUEST No. 2.  Any and all reports completed, filed, or given relating to all use of force incidents involving Plaintiff.

> REQUEST No. 3.  Any and all reports, memoranda, or findings of any investigation conducted into any and all use of force incidents involving plaintiff.

> REQUEST No. 4.  Any and all records, documents, memoranda, or things containing information relating to the medical care rendered to Plaintiff on and after May 19, 2019.

> REQUEST No. 5.  Any and all statements recorded or written in any manner and all other documents and material relating to this matter obtained from or produced by any party relating to this lawsuit or events from which this lawsuit arises.

> REQUEST No. 6.  Any and all video and audio recordings, and photographs relating to any and all use of force incidents relating to Plaintiff.

> REQUEST No. 7.  Any and all video and audio recordings and photographs relating to any and all medical assessments and/or medically relevant to Plaintiff after any and all use of force incidents.

> REQUEST No. 8.  Any and all personnel records of the defendants pertaining to complaints of excessive force, physical abuse, abuse, or misconduct.

> REQUEST No. 9.  Any and all notes, transcriptions, reports, or other documents defendants expect to present during any juncture in the proceedings of this case or in the trial of this case.

> REQUEST No. 10.  Any and all records, documents, memoranda, or things containing information relating to USP Florence's utilization of medical contractors and medical equipment, specifically the mobile MRI service utilized on September 20, 2020.

REQUEST No. 11.  Any and all information, documents, memoranda, or things on policies regarding records management, to include, but not limited to, medical contractors and any other party entering or exiting USP Florence, the retention or destruction of Electronically Stored Information, ESI erasure, modification, or recovery mechanisms such as Meta-Data scrubbers or programs that repeatedly overwrite portions of storage media in order to preclude data recovery and the use of recovery programs to recover deleted data.

[Doc. 119 at 1-4].  These Requests for Production can readily be sorted into four categories: requests related to other use-of-force incidents (Requests for Production No. 1, 2, 3, and 6); requests related to Plaintiff's medical care (Requests for Production No. 4 and 7); requests for litigation documents or materials (Requests for Production No. 5 and 9); and requests related to BOP policies or records (Requests for Production No. 8, 10, and 11).

In addition, Plaintiff submitted the following Requests for Admission:

REQUEST No. 1.  The genuineness of the following documents, copies of which are available for inspection and copying via ECF No. 101: Exhibits P and Q.

REQUEST No. 2.  On September 20, 2020, a mobile MRI service was utilized at USP Florence to provide Joseph Smith 76280-083 (Plaintiff) with an MRI.

[Doc. 118 at 2-3].

Defendants responded to Plaintiff's discovery requests on July 29, 2021, *see* [Doc. 150-1 at 1], and provided a first supplemental response on August 5, 2021.  [*Id.* at 4].  After Plaintiff filed the Motion to Compel, Defendants provided a second supplemental response on January 25, 2022 and a third supplemental response on January 31, 2022.  [*Id.*].

## B.   Analysis

### 1.   Requests for Production

***Requests Related to Other Use-of-Force Incidents***.   With respect to Requests for Production No. 1, 2, 3, and 6, which each request materials related to "any and all" use of force incidents involving Plaintiff, *see* [Doc. 119 at 2-3], Defendants objected to the requests on the

basis that these requests are not relevant or proportional to the needs of the case, asserting that "[a]ny use of force incidents that occurred prior to or after the alleged events of May 19, 2019, are not relevant to any claim or defense, and are therefore outside the scope of discovery permitted under [Rule 26(b)(1)]." [Doc. 150-1 at 1-2]; *see also* [*id.* at 3, 5, 6]. In their Third Supplemental Response, without waiving their objections, Defendants produced documents to Plaintiff with respect to Requests for Production No. 2, 3, and 6, but stated that following a reasonably diligent search, they did not identify any documents responsive to Request for Production No. 1. *See* [*id.* at 2-3, 6].

In the Motion to Compel, Plaintiff argues that other use-of-force incidents are relevant to this case because "[a]ny use of force incidents that occurred prior to or after the May 19, 2019, incident are relevant in order to support liability and punitive damages." [Doc. 139 at 2]. According to Plaintiff, he "seeks to prove a culture, practice, and atmosphere adhered to by staff at USP Florence, to include the defendants, which leads to the intentional unnecessary uses of excessive force constantly, as in this instant case." [*Id.*]. In addition, Mr. Smith asserts that in order to receive punitive damages, he must present evidence of Defendants' "cavalier attitude" towards his safety, so as to demonstrate that Defendants acted recklessly. [*Id.* at 3]. Defendants represent that "[i]n conferral, Plaintiff clarified that he is only seeking documents pertaining to the May 19, 2019, incident at issue in this case and one other use-of-force incident that allegedly occurred on October 7, 2019." [Doc. 150 at 3]. They assert that the requests related to this other incident are not relevant to this case because (1) Plaintiff's FTCA claim does not permit punitive damages; and (2) pattern-or-practice evidence is not relevant to Plaintiff's claims, "which turn on what happened in an individual incident." [*Id.* at 3-5].

To succeed on his Eighth Amendment excessive force claim, Plaintiff must satisfy a two-prong test: "(1) an objective prong that asks if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and (2) a subjective prong under which the plaintiff must show that the officials acted with a sufficiently culpable state of mind." *Redmond v. Crowther*, 882 F.3d 927, 936 (10th Cir. 2018) (quotation omitted). "An official has a culpable state of mind if he uses force 'maliciously and sadistically for the very purpose of causing harm,' rather than 'in a good faith effort to maintain or restore discipline.'" *Id.* (quoting *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)). The following factors are relevant in determining whether the force was applied in good faith or for the purpose of causing harm: "(1) the need for the application of the force; (2) the relationship between the need and the amount of force that was used; (3) the extent of the injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the officials; and (5) any efforts made to temper the severity of a forceful response." *Marshall v. Wiebe*, No. 16-3014-EFM-KGS, 2018 WL 1806760, at *5 (D. Kan. Apr. 17, 2018) (citing *Whitley*, 475 U.S. at 321).

The court does not find that incident reports related to an alleged use of force against Plaintiff months after the incident giving rise to this case is relevant to either the objective prong or the subjective prong of Mr. Smith's Eighth Amendment claim, even to show a "culture" or "practice" of using excessive force, as suggested by Plaintiff. First, the October 7, 2019 use-of-force incident does not bear on whether the use of force against Mr. Smith on May 19, 2019 was sufficiently "objectively harmful" so as to constitute a constitutional violation, which requires an examination of the challenged force—not any subsequent use of force. *See Redmond*, 882 F.3d at 936; *cf. Montoya v. Shelden*, 898 F. Supp. 2d 1279, 1296 (D.N.M. 2012) (in false arrest case, excluding evidence of the defendants' prior arrests because other actions "[did] not make more

probable that [the defendants] acted unreasonable in this case"). Nor would the October 7, 2019 incident have any bearing on the subjective prong of the Eighth Amendment analysis, which considers Defendants' subjective state of mind at the time of the <u>challenged force</u>, taking into account the circumstances of <u>the challenged force</u>—such as the need for force, the amount of force, or the injury inflicted. *Marshall*, 2018 WL 1806760, at *5.

Insofar as Plaintiff argues that this evidence is relevant to establish his entitlement to punitive damages, the court respectfully disagrees. Punitive damages may be awarded "only when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Youren v. Tintic Sch. Dist.*, 343 F.3d 1296, 1308 (10th Cir. 2003).[3] Here, Plaintiff does not explain why an alleged use-of-force incident incurring several months after the conduct challenged in this case would have any bearing on whether the individual Defendants acted with an "evil motive or intent" in using force on Plaintiff on May 19, 2019. To be sure, Mr. Smith does not assert that the Defendants in this matter were involved in any use of force against Plaintiff on October 7, 2019. *See generally* [Doc. 139]. For these reasons, the court finds that this information is not relevant to this case and will not compel Defendants to produce additional documents with respect to Requests for Production No. 1, 2, 3, or 6. *See* Fed. R. Civ. P. 26(b)(1).

***Requests Related to Plaintiff's Medical Care***. Request for Production No. 4 seeks any and all documents related to the medical care rendered to Plaintiff on or after May 19, 2019, and Request for Production No. 7 requests video and audio recordings or photographs relating to any medical assessments performed of Plaintiff after "any and all use of force incidents." [Doc. 119

---

[3] While Defendants argue that punitive damages are not available with respect to the FTCA claim, punitive damages are available in Bivens claims. *Carlson v. Green*, 446 U.S. 14, 22 (1980).

at 3, 4]. Defendants did not object to Request for Production No. 4, instead stating that they were "in the process of preparing documents that may be responsive" and would supplement their response "with such documents within one week." [Doc. 150-1 at 4]. Defendants produced supplemental documents in each of their three Supplemental Responses. [*Id.*]. Defendants objected to Request for Production No. 7, arguing that documents related to other use of force incidents are not relevant to this case, and further stated that "after a reasonable inquiry, no such documents relating to the alleged events of May 19, 2019, have been located." [*Id.* at 6]. However, Defendants produced a video recording of Mr. Smith's May 19, 2019 medical assessment and referred Plaintiff to a photograph produced in response to Request for Production No. 3. [*Id.*].

Mr. Smith states in his Motion to Compel that, with respect to Request for Production No. 4, he and defense counsel conferred and "agreed upon a resolution" in the form of Defendants "producing missing documents," such as

> a lower bunk pass given to Mr. Smith due to his shoulder injuries, the September 20, 2020, MRI results . . ., sick-call request forms . . ., forms completed by Mr. Smith with respect to his February 16, 2020, MRI . . . and the same form completed by Mr. Smith prior to receiving the September 20, 2020, MRI, and any and all other relevant documents, materials, or things pertaining to medical care rendered to Plaintiff on and after May 19, 2019.

[Doc. 139 at 8]. Plaintiff asserts, however, that Defendants "provided and/or produced incomplete, overbroad discovery, and [have] yet to supplement this request via producing documents that exist and are relevant to this request." [*Id.*]. Mr. Smith does not indicate which documents he is still waiting on Defendants to produce. *See generally* [*id.*]. In their Response, Defendants assert that they produced Plaintiff's "complete electronic medical record from May 1, 2019 through May 24, 2021." [Doc. 150 at 8]. In addition, they state that they produced additional medical records on January 25, 2022, administrative remedy requests and responses "that may also be responsive to this request" on January 31, 2022, [*id.*], and that the documents referenced by Plaintiff—the lower

13

bunk pass, records related to the September 20, 2020 MRI—have been produced by Defendants, but that "[t]o the extent that Plaintiff maintains that certain medical documents are still missing, Defendants would be glad to confer further."  [*Id.* at 9].  Defendants represent that they expect to produce additional medical records, dated through the present, "within the next two weeks, and to supplement periodically thereafter."  [*Id.* at 8].

The court is presently without sufficient information to determine whether an order compelling Defendants to produce any additional documents in response to Request for Production No. 4 is warranted.  This court accepts the representation of counsel, as officers of this court, as true, pursuant to Rules 11 and 26(g) of the Federal Rules of Civil Procedure.  *See Selsor v. Kaiser*, 81 F.3d 1492, 1501 (10th Cir. 1996) (observing that, as officers of the court, statements of attorneys to the court are virtually made under oath).  On this record, and without evidence establishing that something more exists, the court cannot compel Defendants to produce what it says does not exist.  *See Smith v. Pizza Hut, Inc.*, No. 09-cv-01632-CMA-BNB, 2013 WL 1751850, at *3 (D. Colo. Apr. 23, 2013).

With respect to Request for Production No. 7, the court declines to compel Defendants to produce any documents.  Defendants represent that they have located no responsive documents to this request, insofar as Plaintiff seeks video or audio recordings or photographs related to the May 19, 2019 incident, aside from a photograph and a video produced to Plaintiff.  *See* [Doc. 150-1 at 6].  Moreover, insofar as Mr. Smith argues that video or audio recordings or photographs from medical assessments taking place "after any and all use of force incidents" are relevant to his case in order to "support liability and punitive damages," the court respectfully disagrees that such evidence is relevant here.  The medical treatment Mr. Smith received after other uses of force against Plaintiff will not tend to make any fact more or less probable with respect to whether

Defendants' use of force against Plaintiff on May 19, 2019 was objectively serious and was done with a sufficiently culpable state of mind, i.e., the relevant inquiries on Plaintiff's excessive force claim. *Redmond*, 882 F.3d at 936.[4]

  ***Requests for Litigation Documents or Materials***.  Requests for Production No. 5 and 9 are framed in connection with this litigation; namely, Plaintiff seeks any and all statements, documents, or materials "relating to this matter obtained from or produced by any party relating to this lawsuit or events from which this lawsuit arises," as well as any documents or materials Defendants "expect to present during any juncture in the proceedings of this case or in the trial of this case."  [Doc. 119 at 3, 4].  Defendants objected to these requests on the bases that they are vague; that they seek documents unrelated to the underlying events giving rise to this action, which are not relevant and may be privileged; and that they could be construed as seeking deposition transcripts, which must be purchased from the court reporter or reporting agency.  [Doc. 150-1 at 4-5, 7-8].  Defendants did, however, refer Plaintiff to their initial disclosures, any and all written discovery responses by any party, and any and all deposition transcripts or exhibits.  [*Id.* at 8].  Additionally, in their Third Supplemental Response, Defendants produced or directed Plaintiff to one document with respect to Request for Production No. 5, [*id.* at 5], and further stated that they are not withholding any documents on the basis of their objections with respect to Request for Production No. 9.  [*Id.* at 8].

  In the Motion to Compel, Plaintiff states that during conferral with defense counsel, he "defin[ed] [Request for Production No. 5] to any written or audio statements given by any party with respect to this instant case or any material produced by any party that bears any relevance to

---

[4] The court notes that Mr. Smith's Eighth Amendment deliberate indifference claim and FTCA medical negligence claim have been dismissed.  *See* [Doc. 106 at 8].

this instant case." [Doc. 139 at 10].  Plaintiff argues that the discovery produced by Defendants has been "incomplete and/or contains omissions and beyond the initial production of discovery no other discovery has been produced."  [*Id.*].  In addition, Mr. Smith states that the objection to Request for Production No. 9 has been resolved, but suggests that Defendants agreed to provide "a list of deponents and/or deposition transcripts" but "[n]o such discovery has been produce[d] as agreed upon."  [*Id.* at 11].  In their Response, Defendants state that a "list of deponents" is not a document that they intend to present during the course of this litigation, and thus, it is not responsive to Plaintiff's request.  [Doc. 150 at 10].  Moreover, they state that they have yet to take any depositions in this matter, such that there are no deposition transcripts to produce.  [*Id.*].

The court declines to compel Defendants to produce any additional materials with respect to Requests for Production No. 5 and 9.  With respect to Request for Production No. 9, Defense counsel represents that Defendants do not intend to present any list of deponents during this litigation and that Defendants have not yet taken any depositions during the course of discovery, *see* [*id.*], which the court takes as true.  *See Selsor*, 81 F.3d at 1501.  Indeed, Defendants have stated that they are not withholding any documents on the basis of their objections to Request for Production No. 9.  [*Id.* at 9].  Again, the court cannot compel the production of documents that do not exist.  *Pizza Hut, Inc.*, 2013 WL 1751850, at *3.

As to Request for Production No. 5, while Plaintiff states generally that discovery produced by Defendants "has been incomplete and/or contains omissions," Plaintiff does not provide any explanation as to why he believes the documents already produced are incomplete.  *See generally* [Doc. 139].  Absent any argument from Plaintiff explaining why a court order compelling further

production is warranted, the court cannot take any action.[5]   Insofar as Mr. Smith states that "no

other discovery has been produced" beyond Defendants' initial disclosures, the court notes that

Defendants produced documents in their Third Supplemental Response, *see* [Doc. 150-1 at 3, 5].

Finally, with respect to Request for Production No. 5, Defendants have withheld documents on

grounds of privilege and irrelevancy.   [*Id.* at 5].   The court agrees with Defendants that, to the

extent Request for Production No. 5 seeks "any and all any written or audio statements given by

any party with respect to this instant case or any material produced by any party that bears any

relevance to this instant case," documents that are responsive to this request may be privileged.

*See United States v. Phelan*, 3 F. App'x 716, 718 (10th Cir. 2001) (the attorney-client privilege

"protects confidential communications by a client to an attorney made in order to obtain legal

assistance from the attorney in his or her capacity as a legal advisor") (quotation omitted); *cf. Herd*

*ex rel. Herd v. Asarco Inc.*, No. 01-CV-891-H M, 2002 WL 34584902, at *2 (N.D. Okla. Apr. 26,

2002) ("The drafting process is often the type of communication at the core of the attorney-client

privilege.   It often involves deciding what positions to assert and what information should or

should not be revealed along with the reasons for these decisions.").

     For all of these reasons, the court does not find that an order compelling further production

with respect to Requests for Production No. 5 and 9 is warranted at this juncture.

---

[5] Mr. Smith does state that he "has been approved for, scheduled for, and awaiting an EEG for
suspected nerve damage located in nerves beginning from his neck and ending in his hands that is
a result of the 2 incidents of excessive force.   These documents have not been supplemented and
produced to Plaintiff by the defendants."   [Doc. 139 at 10].   However, Mr. Smith does not explain
why documents demonstrating that Plaintiff has been approved for a medical procedure would be
responsive to a request seeking "material relating to this matter obtained from or produced by any
party."   [*Id.*].; *see also* [Doc. 150 at 8 (defense counsel representing that Defendants have produced
Mr. Smith's "complete electronic medical record")].

***Requests Related to BOP Policies or Records***.    Finally, Plaintiff requests certain BOP policies or records in Requests for Production No. 8, 10, and 11.  Specifically, Plaintiff seeks personnel records of Defendants related to any use of excessive force, physical abuse, or misconduct, any and all documents containing information related to USP Florence's use of medical contractors or medical equipment; and any and all documents related to USP Florence's "records management."  [Doc. 119 at 4-5].  In the Motion to Compel, Mr. Smith states that he narrowed Request for Production No. 11 to "information related to the MRI Mr. Smith received on September 20, 2020, . . . which the defendants claim Mr. Smith never received due to the 'novel COVID-19 pandemic' preventing the mobile MRI service from entering the USP Florence complex."  [Doc. 139 at 13].  Defendants objected to these requests, asserting that the requests are overbroad, vague, and not relevant to this case.  [Doc. 150-1 at 7, 8-10].  In addition, Defendants stated that "after a reasonable search," they did not locate any personnel records related to complaints of force or abuse with respect to the events of May 19, 2019.  [*Id.* at 7].

Mr. Smith argues that the discovery requested in Request for Production No. 8 is relevant because he "plans to show evidence of similar acts prior to and after Mr. Smith's excessive force incident," which is "relevant in order to support liability and punitive damages."  [Doc. 139 at 7].  Additionally, Plaintiff argues that the objections to Requests for Production No. 10 and 11 were "resolved" during conferral with counsel, but that Defendants "have yet to produce documents responsive to this request as per agreement and resolution with counsel for the defendants."  [*Id.* at 12, 13].  In response, Defendants argue that evidence of other alleged uses of force would not be relevant to punitive damages, pattern-or-practice evidence is not relevant to Plaintiff's claims, and that such evidence would be inadmissible under Rule 404 of the Federal Rules of Evidence.  [Doc. 150 at 6].  With respect to Requests for Production No. 10 and 11, defense counsel states

that it is not her recollection, and her notes do not reflect, that these objections were resolved during conferral. [*Id.*]. Moreover, they assert that Requests for Production 10 and 11 seek documents which are not relevant to this case, as they do not dispute that Mr. Smith received an MRI on September 20, 2020 and have produced records reflecting that this MRI was taken. [*Id.* at 6-7].

The court is respectfully not persuaded that an order compelling Defendants to produce documents is appropriate with respect to Request for Production No. 10 and 11. Mr. Smith does not explain why these requests are relevant to his remaining claims, which concern the use of force—not the medical treatment Mr. Smith received thereafter. *See generally* [Doc. 139]; *see also* [Doc. 106 at 8]. Insofar as Mr. Smith seeks to use the fact of the MRI to establish damages arising from the alleged use of force, Defendants have produced documentation confirming the MRI. *See* [Doc. 149-2 at 2].

With respect to Request for Production No. 8, wherein Plaintiff seeks personnel records of the named Defendants regarding complaints of excessive force, the court reaches a different result. As an initial matter, the court finds that the requested records are not relevant to the objective prong of Plaintiff's excessive force claim. In *Tanberg v. Sholtis*, the Tenth Circuit found that records of the defendant's prior incidents of force were not relevant to the claimant's Fourth Amendment excessive force claim. 401 F.3d 1151, 1168 (10th Cir. 2005). The plaintiffs in *Tanberg* had sought to introduce such evidence to show that the defendant intended to use excessive force on the plaintiffs "because he demonstrated similar intent on previous occasions;" however, the Tenth Circuit concluded that, because a Fourth Amendment excessive force claim is analyzed only under an objective standard, evidence of prior use of force was not relevant to the claim, which concerned whether the defendant's force was excessive during the challenged

19

encounter. *Id.* at 1167-68; *see* also *Mata v. City of Farmington*, 798 F. Supp. 2d 1215, 1236 (D.N.M. 2011) ("Under the controlling law, the Court finds that evidence of specific incidents of FPD officers' use of force, internal-affairs complaints, and civil rights lawsuits are not relevant to the question whether Rahn violated Mata's and J.A.M.'s constitutional rights by using excessive force.").

Whether the evidence is relevant to the subjective prong presents a closer question. As set forth above, the subjective prong turns on a number of factors, including the need for the application of force, the relationship between the need and the amount of force that was used, the extent of the injury inflicted, the extent of any threat to staff or inmates, and any efforts made to temper the severity of a forceful response. *Marshall*, 2018 WL 1806760, at *5. Arguably, if Defendants had previously been subject to inmate complaints alleging an excessive use of force and/or had been reprimanded for such conduct, records of these events could provide insight into the named Defendants' knowledge about, for example, the appropriate amount of force needed to quell an inmate; this information could be relevant to determining whether Defendants, in using force on Plaintiff, acted reasonably or "maliciously and sadistically for the very purpose of causing harm." *Redmond*, 882 F.3d at 936; *see also* Fed. R. Civ. P. 404(b) (stating that evidence of prior bad acts may be admissible to show "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident").[6]

---

[6] Defendants argue that the records requested by Plaintiff are inadmissible under Rule 404(b). *See* [Doc. 150 at 6]. But evidence need not be admissible to be discoverable, *see* Fed. R. Civ. P. 26(b)(1), and here, the question before the court is whether "discovery derived from this request is relevant and may lead to admissible evidence." *Est. of Rossiter*, No. 08-cv-01661-LTB-KLM, 2009 WL 1609398, at *2-3 (D. Colo. June 9, 2009). "[W]hether evidence of alleged other instances of excessive force is more prejudicial than probative of Plaintiff's claim should await resolution at trial," as it is "premature to render a decision on the admissibility of such evidence," *Wilson v. Hill*, No. 2:08-cv-552, 2010 WL 5014486, at *3 (S.D. Ohio Dec. 3, 2010), a decision which is reserved for the presiding judge.

Indeed, "[c]ourts regularly grant plaintiffs in excessive force cases leave to obtain the defendant officers' disciplinary files." *Shepherd v. Neuschmid*, No. 2:19-cv-0084-JAM-DBP, 2021 WL 1172915, at *4 (E.D. Cal. Mar. 29, 2021) (citing cases); *see also Melendez v. Greiner*, No. 01 CIV.07888 SAS DF, 2003 WL 22434101, at *3 (S.D.N.Y. Oct. 23, 2003) (finding that, "to the extent other inmates' grievances or complaints allege conduct similar to that alleged in the Complaint, and were similarly directed against any of the named defendants, the documents sought may well yield information relevant to [the plaintiff's] claims, and such documents are therefore discoverable"); *Roland v. Hill*, No. 17-cv-6524-FPG-JWF, 2019 WL 1128842, at *2 (W.D.N.Y. Mar. 12, 2019) ("Grievances or complaints against defendants for conduct similar to that at issue in this case is plainly relevant."). Defendants concede that any discipline that arose from the May 19, 2019 incident would be relevant and discoverable, but represent that no such documents exist. [Doc. 150 at 6]. But they argue that any information outside of this narrow scope is overbroad and not relevant. [*Id.* at 5].

Assuming that evidence of complaints of excessive force made against Defendants for conduct similar to that alleged by Plaintiff is relevant, the court must also determine whether the requested discovery is proportional to the needs of this case. Fed. R. Civ. P. 26(b)(1). Here, Mr. Smith requests "[a]ny and all personnel records of the defendants pertaining to complaints of excessive force, physical abuse, abuse, or misconduct," without temporal or contextual limitations. [Doc. 119 at 4]. This request is arguably overbroad. *See Shepherd*, 2021 WL 1172915, at *4 (request for disciplinary records was overbroad where the request was not limited to a specific timeframe); *Gordon v. Beckles*, No. CIV.A. 09-637-GMS, 2011 WL 862246, at *2 (D. Del. Mar. 9, 2011) (request for "all grievances, complaints, or other documents" concerning "mistreatment of inmates" from prior six years was overbroad). Here, Mr. Smith alleges in his Amended

Complaint that Defendants Trujillo and Gonzalez used excessive force against him while he was being handcuffed.  *See* [Doc. 21 at 7].  But records of alleged excessive by Defendants Trujillo or Gonzalez occurring after May 19, 2019 would not be relevant to the subjective intent of these Defendants at the time of the alleged use of force.  Moreover, Plaintiff's general request for complaints of "misconduct" against these Defendants is insufficiently specific and could cover a wide range of conduct that does not have any resemblance to the conduct alleged in the Amended Complaint, which cuts against a finding of relevance.  *See Gleason v. Placencia*, No. 1:19-cv-00539-NONE-EPG (PC), 2020 WL 5235706, at *3 (E.D. Cal. Sept. 2, 2020) (finding that it was "not obvious" that records of different excessive force incidents involving different inmates were relevant to plaintiff's claims); *Antonetti v. Neven*, No. 2:07-cv-00162-MMD, 2013 WL 3875382, at *8 (D. Nev. July 25, 2013) (finding that other inmates' complaints of abuse against the defendant were not discoverable).

Thus, it would be appropriate to narrow Request for Production No. 8 to ensure that it captures only those materials which are relevant to Plaintiff's claims, i.e., any and all documents reflecting an investigation into or discipline for the use of excessive force while an inmate was otherwise restrained by Defendants Trujillo and Gonzalez[7] in the five years prior to May 19, 2019. Defendants do not address whether other investigations and/or discipline for excessive force while an inmate was otherwise restrained, unrelated to this particular incident, exist.  *See generally* [Doc. 150].  In recognition of the sensitivities presented by production of such documents directly to Plaintiff, who is a pro se inmate still in BOP custody, this court **ORDERS** Defendants to **FILE** records of any use of excessive force by Defendants Trujillo or Gonzalez, redacting any identifying

---

[7] Mr. Smith does not identify the third individual Defendant named in his Amended Complaint, *see* [Doc. 21 at 1], and the court therefore limits this Request for Production to the identified Defendants.

information of the complainant, or an affidavit indicating that no responsive information exists under Level 2 Restriction, D.C.COLO.LCivR 7.2(b), to the court for *in camera* review on or before **March 11, 2022**.  Defendants' submission **SHALL INCLUDE** the suggested access procedures, if any, that Defendants believe would be necessary to protect the confidentiality of the documents but which would still permit Plaintiff to view and access the documents, should the court rule that disclosure must be made.  After review, the court will determine whether and how disclosure shall be made to Plaintiff based on whether the circumstances of the incidents are sufficiently comparable to be relevant and proportional to the needs of the case.  *See Hand v. Verheyen*, No. 11-C-884, 2012 WL 5954212, at *1 (E.D. Wis. Nov. 27, 2012) ("Balancing the concern for prison security and As–Saffat's confidentiality with Plaintiff's need for the evidence to support his deliberate indifference claim, the appropriate course is for Defendant to submit As–Saffat's disciplinary records to the Court for an in camera review."); *Paulding v. City of Buffalo*, No. 10CV712S, 2011 WL 5187953, at *3 (W.D.N.Y. Nov. 1, 2011) ("Before . . . balancing the interest in keeping these records confidential, this Court must review the personnel records in question in camera.").  <u>In so ruling, the court does not pass on the relevance of the materials produced—noting that ordering the excessive force investigations and/or disciplinary records may result in documents that are not captured by Rule 26(b)(1) in this case—and does not pass on the admissibility of any such evidence, which will be preserved for the presiding judge.</u>

## 2.   Requests for Admission

Next, Mr. Smith moves the court to compel Defendants to provide supplemental answers to his Requests for Admission, which requested that Defendants admit (1) "[t]he genuineness" of Exhibits P and Q to ECF No. 101; and (2) that on September 20, 2020, a mobile MRI service was used at USP Florence to prove Mr. Smith with an MRI.  [Doc. 118 at 2-3; Doc. 139 at 13-15].

*Exhibits P and Q*.  The filing docketed at ECF No. 101 is a Motion to Attach Exhibits in Support to Response to Motion to Dismiss, [Doc. 101 at 1], to which Mr. Smith attached numerous exhibits.  *See* [Doc. 101-1].  Exhibit P contains a request for Mr. Smith, dated June 21, 2020, in which he requested that Dr. Norton request an MRI for his shoulders, [*id.* at 25], as well as a memorandum from Dr. Norton dated June 8, 2020 indicating that "[d]ue to the inefficient and problematic situation the current sick call scheduling system is in, . . . resulting in some inmate[s] not waiting at all to be *see*n while other[s] wait months," . . . "[a]s of today June 8, 2020 all requests for sick call up to this day will be discontinued."  [*Id.* at 27].  Exhibit Q is a request from Mr. Smith dated October 7, 2020, directed to "Ms. Kraft, HIT/Medical Records," in which Mr. Sith requested to receive a copy of the MRI results from the September 20, 2020 MRI.  [*Id.* at 28].  The request is annotated with a note from a Nurse Bailey stating that "[w]e have not received those results yet."  [*Id.*].  In Request for Admission No. 1, Plaintiff requested that Defendants admit to the "genuineness" of these exhibits.  [Doc. 118 at 2].

Defendants objected to this request as compound.  [Doc. 150-1 at 10].  Without waiving their objections, Defendants responded with respect to Exhibit P that they "admit that the second page of Exhibit P," i.e., Dr. Norton's memorandum, "is genuine," but with respect to Mr. Smith's sick-call request, they "made reasonable inquiry" into the document and "the information they know or can readily obtain is insufficient to enable them to admit or deny."  [*Id.*].  As to Exhibit Q, they "admit that Nurse Bailey's signature and stamp in the lower right-hand corner . . . are genuine" but with respect to the remainder of the document, "they have made reasonable inquiry and . . . the information they know or can readily obtain is insufficient to enable them to admit or deny."  [*Id.* at 11].

In his Motion to Compel, Mr. Smith states that he attempted to confer with defense counsel about this request but "[t]his request could not be resulted due to an inadvertent oversight by this Court." [Doc. 139 at 14]. Mr. Smith states that there is a back side to his June 21, 2020 sick-call request that contains Nurse Bailey's "name, title, and place of employment, in addition to [Nurse] Bailey's remarks in response to Mr. Smith's 'Inmate Request.'" [*Id.*]. Mr. Smith states that once this inadvertent oversight has been corrected, defense counsel has agreed to admit the genuineness of Exhibit P. [*Id.*].

The court has conferred with the Clerk's Office of the United States District Court and has confirmed that both the back side of the first page of Exhibit P and the back side of the first page of Exhibit Q were inadvertently not scanned when the document was received in the mail and uploaded to this District's Electronic Case Filing system. This error has been corrected, and Exhibits P and Q are now complete. [Doc. 101-1 at 25-26, 28-29]. Based on Plaintiff's representation that defense counsel agreed to supplement Defendants' response if the docketing error were corrected, Defendants are **ORDERED** to supplement their response to Request for Admission No. 1 in light of the newly available second page of Exhibit P no later than **March 11, 2022**.

Additionally, with respect to Exhibit Q, Mr. Smith states that defense counsel "has agreed to admit the genuineness of the entire document . . . yet no admission has been forthcoming in writing." [Doc. 139 at 14]. In their response, Defendants do not respond to this assertion. [Doc. 150 at 10]. Instead, they simply state that complete copies of the documents have not been provided to Defendants and that "[t]he obligation to ensure that Defendants have a complete and correct copy of the documents in question rests with Plaintiff, not Defendants." [*Id.*]. While the court understands that Defendants cannot admit to the genuineness of incomplete documents, the

court nevertheless does not find that Plaintiff failed to meet his discovery obligations, given the fact that the incompleteness of the exhibits was the result of an inadvertent docketing error. In light of the discovered docketing error and newly available second page of Exhibit Q, Defendants are **ORDERED** to supplement their response to Request for Admission No. 1 with respect to Exhibit Q no later than **March 11, 2022**.

*The September 20, 2020 MRI*. Defendants objected to Request for Admission No. 2 on the basis that it was not relevant or proportional to the needs of the case. [Doc. 150-1 at 11]. However, they supplemented their response on January 25, 2022 to admit this statement. [*Id.*]. For this reason, Defendants argue that because they have supplemented their response, the dispute set forth in the Motion to Compel has been resolved. [Doc. 150 at 10]. Because it appears that this dispute has been resolved, the court finds it unnecessary to compel Defendants to produce any additional response to Request for Admission No. 2.

### C.    Sanctions

At the conclusion of his Motion to Compel, Mr. Smith states that there is no reasonable justification for Defendants' objections, such that "an order to compel is appropriate under Fed. R. Civ. P. 37(a)(3)(B), as is any applicable sanctions deemed appropriate by this Court." [Doc. 139 at 15]. The court construes this as a request under Rule 37(a)(5)(C), which provides that if a motion to compel is granted in part and denied in part, "the court may issue any protective order authorized under Rule 26(c)[8] and may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(C).

While Mr. Smith states Defendants' objections were not substantially justified, he does not support this assertion with substantive argument. [Doc. 139 at 15]. "Where parties have taken

---

[8] Defendants do not request a protective order. *See* [Doc. 150].

legitimate positions, and the Court grants in part and denies in part a motion to compel discovery responses, courts generally conclude that justice requires that each party be responsible for their own fees and costs." *Benavidez v. Sandia Nat'l Labs.*, 319 F.R.D. 696, 720 (D.N.M. 2017). Here, the court finds that Defendants' objections and resultant nondisclosures do not require any payment of expenses to Plaintiff.[9] First, the court notes that, with respect to the majority of Plaintiff's discovery requests, the court has declined to compel Defendants to produce any additional documents, finding Plaintiff's requests to be outside of the scope of Rule 26(b). And with respect to those discovery requests to which this court has ordered further action by Defendants, the court finds that Defendants' objections were based on either an inadvertent docketing error or a rational legal argument. *See Smash Tech., LLC v. Smash Sols.*, LLC, 335 F.R.D. 438, 450 (D. Utah 2020) ("[A] position is substantially justified 'if it has a reasonable basis in both law and fact.'"). As a result, the court does not find it necessary to award any reasonable expenses for the Motion to Compel.

For the reasons set forth herein, the Motion to Compel is **GRANTED in part** and **DENIED in part**. Defendants shall supplement their discovery responses to the extent and in the time required by this Order.

## II. The Motion to Take Depositions

Next, Plaintiff seeks leave under Rule 30(a)(2)(B) to depose three individuals currently in the custody of the BOP: Antonio Dovine, John Small, and Edward Washington. [Doc. 141 at 1]. He states that he "expects [the depositions] to not extend beyond 2 hours per deponent, via remote

---

[9] "There is some authority for the proposition that although pro se litigants cannot recover attorney fees under Rule 37(a)(5), they can recover "documented and reasonable litigation costs" under that Rule." *Grays v. Auto Mart USA, LLC*, No. 18-cv-01761-MSK-NYW, 2020 WL 6268630, at *15 (D. Colo. Oct. 26, 2020) (citing *Richard v. Dignean*, 322 F.R.D. 450, 466 (W.D.N.Y. 2019); *Walker v. Tri-Tech Planning Consultants, Inc.*, 149 F.R.D. 22, 23 (E.D.N.Y. 1993)).

means by oral examination." [*Id.* at ¶ 8]. In response, Defendants state that the Motion "should be denied to the extent that it seeks leave to take any deposition in a manner inconsistent with the requirements that: (1) deposition testimony be recorded; and (2) depositions be conducted before an officer authorized or appointed to administer oaths." [Doc. 149 at 1]. In addition, Defendants argue that the Motion does not establish that Mr. Dovine has personal knowledge of a non-privileged matter that is both relevant and proportional to the needs of this case, as required by Rule 26(b)(1). [*Id.* at 1-2]. The court thus construes Defendants' Response as opposing the entirety of Mr. Smith's request for leave to depose Mr. Dovine, but only opposing the request to depose Mssrs. Small and Washington "[t]o the extent that Plaintiff is unable to take the requested depositions consistent with the requirements of the Federal Rules of Civil Procedure." [*Id.* at 4]. The court addresses the Parties' arguments below.

*Antonio Dovine*. First, Mr. Smith seeks leave to depose Mr. Dovine. [Doc. 141 at 1]. Plaintiff asserts that Mr. Dovine "has vital information in this case on the subject of Plaintiff being escorted from SHU to the mobile MRI service that was present at [USP] Florence on September 20, 2020, the identity of the female correctional officer [who] was one of two correctional officers to escort Plaintiff to receive his MRI, and the fact that Plaintiff received an MRI for his injuries on September 20, 2020." [*Id.* at ¶ 2]. According to Mr. Smith, this information "is necessary to show the extent and lengths in which the defendants and co-conspirators took to conceal Plaintiff's injuries," as Defendants and their co-conspirators "have denied the fact that Plaintiff received an MRI for his injuries on September 20, 2020, which has ultimately and effectively prevented Plaintiff from receiving a diagnosis and treatment for his injuries to date." [*Id.*]. Plaintiff argues that a deposition of Mr. Dovine is the most efficient manner in which he may obtain this relevant evidence. [*Id.* at ¶ 3].

Relevant here, Mr. Smith's Second Amended Complaint alleges that he was injured following the excessive use of force on him by Defendants Trujillo, Gonzalez, and the unidentified officer. [Doc. 21 at 7-10, 13-14]. He further alleges he submitted various "sick-calls" but received only conservative treatments that did not alleviate his pain. *See* [*id.*]. After receiving an X-ray, which revealed "no damaged bones in [his] shoulders," Mr. Smith alleges that other medical providers indicated Mr. Smith would receive an MRI, but that Dr. Pelton "denied the MRI." *See* [*id.* at 11-12]. Plaintiff alleges that he did eventually receive an MRI on his shoulder that revealed no "broken bones." [*Id.* at 15].

Defendants argue that Mr. Smith has failed to establish that Mr. Dovine has information that is relevant and proportional to this case and thus, the requested discovery is outside the scope of Rule 26. [Doc. 149 at 3, 4]. First, they assert that "the fact that Plaintiff received an MRI for his injuries on September 20, 2020, is not in dispute," and that Defendants have produced medical records to Plaintiff reflecting his September 20, 2020 MRI. [*Id.* at 4]; *see also* [Doc. 149-2 at 2]. In addition, they assert that Plaintiff's argument that the testimony is necessary to show concealment "fails," as the presiding judge has characterized Plaintiff's claim that Defendants have concealed or destroyed medical evidence as "implausible and conclusory." [Doc. 149 at 4 (quoting [Doc. 106 at 6])].

The court respectfully agrees with Defendants that Plaintiff has not shown that the requested deposition testimony is relevant and proportional to the needs of the case. First, while the court is mindful of the fact that the Second Amended Complaint was filed prior to September 20, 2020, *see* [Doc. 21], there is currently no information in the record from which the court could determine why the identity of the correctional officer who escorted him to the MRI are relevant to his pending claims. *See* [Doc. 141 at ¶ 2]. Additionally, contrary to Mr. Smith's assertion,

Defendants do not deny that Plaintiff received an MRI on September 20, 2020. While they objected to Plaintiff's request for admission concerning the MRI as "not relevant or proportional, and therefore outside the scope of discovery permitted under Fed. R. Civ. P. 26(b)(1)," they nevertheless admitted to this fact. [Doc. 149-1 at 3]. Moreover, they provided Plaintiff a copy of his relevant medical records, which confirm that an MRI was taken on September 20, 2020. [Doc. 149-2 at 2]. The court is thus respectfully not persuaded that a deposition of Mr. Dovine is the most efficient way to obtain evidence that this MRI occurred, given the other evidence in Plaintiff's possession confirming the imaging. Accordingly, the court will respectfully deny Mr. Smith's request to depose Mr. Dovine. *See* Fed. R. Civ. P. 30(a)(2) (requiring that the court grant leave "consistent with Rule 26(b)(1) and (2)").

*John Small and Edward Washington*. Next, Mr. Smith seeks leave to depose Mr. Small and Mr. Washington, each of whom Mr. Smith asserts possesses information relevant to this case. [Doc. 141 at ¶¶ 4, 6]. Mr. Smith contends that Mr. Small has "vital information in this case on the subject of Plaintiff's state-of-mind prior to being subjected to the excessive force on May 19, 2019; why Plaintiff requested protective custody on May 19, 2019, which led to the use of excessive force . . . against Plaintiff, and defendant Gonzalez's deliberate indifference to Plaintiff's safety when defendant Gonzalez intentionally, falsely made statements to John Small which if believed by John Small and other inmates would have placed Plaintiff at a substantial risk of harm via assault by other inmates. [*Id.* at ¶ 4]. In addition, Mr. Smith asserts that Mr. Washington witnessed the use of force and can thus "attest to the actions of the defendants during the use of excessive force," and further possesses information related to Plaintiff's state of mind prior to the May 19, 2019 use of force, including why Plaintiff requested protective custody on May 19, 2019. [*Id.* at ¶ 6].

Defendants do not argue that Mssrs. Small and Washington do not possess information which is relevant to this case. *See generally* [Doc. 149]. Rather, they argue that Plaintiff "must conduct depositions in a manner consistent with the Federal Rules of Civil Procedure," and they oppose the Motion insofar as the depositions would violate those Rules. [*Id.* at 2-3]. Specifically, Defendants state that the Federal Rules require that (1) depositions be taken before a person authorized to administer oaths by the laws of the United States (an "officer"); (2) the party taking the deposition shall state in the notice the method by which the testimony shall be recorded and shall bear the costs of such recording; and (3) only an officer or a person action in the presence or under the direction of an officer may record the testimony. [*Id.* at 2 (citing Fed. R. Civ. P. 28(a); Fed. R. Civ. P. 30(b)(3); and Fed. R. Civ. P. 30(c)(1))]. Defendants state that if Mr. Smith could meet the requirements of the Federal Rules (such as by hiring a court reporter), they would not oppose the Motion to Take Depositions. [*Id.*]. However, they note that Mr. Smith proceeds in this case *in forma pauperis*, and "it appears that Plaintiff cannot bear the cost of taking the requested depositions before an authorized officer, nor of recording the depositions." [*Id.* at 2-3]. Because Plaintiff did not file a reply, he has not refuted any of Defendants' arguments.

"Civil litigants, including pro se litigants, generally bear their own deposition costs." *Blackwell v. Houser*, No. 5:16-cv-67-FDW, 2017 WL 392184, at *3 (W.D.N.C. Jan. 27, 2017). Thus, Defendants are correct that "Plaintiff's in forma pauperis status also does not entitle him to a waiver of any of the costs associated with this form of deposition; instead, he must pay the necessary deposition officer fee, court reporter fee, and costs for a transcript." *Griffin v. Johnson*, No. 1:13-cv-01599-LJO-BAM (PC), 2016 WL 4764670, at *2 (E.D. Cal. Sept. 12, 2016); *see also Nowlin v. Lusk*, No. 11CV712S, 2014 WL 298155, at *9 (W.D.N.Y. Jan. 28, 2014) ("The costs of a deposition (the fees for swearing the oaths for testimony, the costs of recording testimony, and,

if by remote means, the costs of setting up the recording) is usually borne by the party taking the deposition, even when that party is proceeding *pro se* and granted *in forma pauperis* status.").

In his Motion, Mr. Smith does not explain how he plans to fund the costs of the two depositions, has not detailed the means by which the depositions will be recorded, and has not identified the officer by whom the depositions will be conducted. *See generally* [Doc. 141]. Courts routinely deny motions under Rule 30(a)(2)(B) where the movant has failed to address how he or she will comply with the numerous requirements of the Federal Rules in conducting the requested deposition(s). *See, e.g.*, *Braham v. Lantz*, No. 3:08-cv-1564 DFM, 2011 WL 4809032, at *1 (D. Conn. Oct. 11, 2011) (denying motion without prejudice where the plaintiff did not detail how he would cover the costs of the depositions, the method of recording, or how he would secure a deposition officer); *Pressley v. Pa. Dep't of Corr.*, No. 3:cv-08-2131, 2011 WL 13277239, at *2 (M.D. Pa. Jan. 27, 2011) (denying motion without prejudice where the plaintiff failed to address the requirement that the deposition be conducted before an officer, how the deposition would be transcribed, and who would pay the expenses involved, finding this "weigh[ed] heavily in favor of the denial of Plaintiff's motion"); *Gaia v. Smith*, No. C-09-212, 2010 WL 1257820, at *1 (S.D. Tex. Mar. 24, 2010) (denying a motion for leave to depose inmates "without prejudice subject to a request by plaintiff as to the method of the depositions as well as an indication as to how the fees and expenses consistent with those depositions will be paid.").

While the court acknowledges the difficulties an incarcerated plaintiff will likely face in creating a plan for taking the depositions of other incarcerated individuals which complies with all of the requirements of the Federal Rules, the court does not find it appropriate to grant Plaintiff's Motion where there is currently no indication that such depositions may be taken in compliance with the Federal Rules. Accordingly, the Motion to Take Depositions will be **DENIED <u>without</u>**

**prejudice**.  Should Plaintiff file a renewed motion, he must set forth the method of recording, who will administer the oath, and the estimated cost of the depositions and the way Plaintiff intends to pay the costs.  Plaintiff is hereby advised that the court will not order Defendants or defense counsel to make the necessary arrangements for any requested depositions, as defense counsel cannot serve as Plaintiff's advocate.  *Griffin*, 2016 WL 4764670, at *2.[10]

## CONCLUSION

For the reasons stated herein, **IT IS ORDERED** that:

(1)     The Motion for Order Overruling Objections to Request for Production (Fed. R. Civ. P. 37(a) [Doc. 139] is **GRANTED in part** and **DENIED in part** as set forth in this Order;

(2)     Defendants **SHALL SUPPLEMENT** their response to Request for Admission No. 1 in light of [Doc. 101-1 at 26, 29] on or before **March 11, 2022**;

(3)     Defendants **SHALL FILE**, under Level 2 Restriction and on or before **March 11, 2022**, any and all documents reflecting inmate complaints alleging the use of excessive force on an restrained inmate by Defendants Trujillo and Gonzalez which were submitted in the five years prior to May 19, 2019, to permit the court to conduct an *in camera* review of such documents;

---

[10] On February 22, 2022, Plaintiff submitted a letter to the Clerk of the Court, asking the Clerk to "inform [him] of the cost for 10 depositions via audiovisual and the cost of 10 depositions via teleconference; in the most effective and cost[-]efficient means with respect to recording and conduction before an officer authorized or appointed to administer oaths." [Doc. 160 at 1].  While the court acknowledges the difficulties faced by an incarcerated litigant in obtaining discovery, the court cannot act as Plaintiff's advocate, *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991), and cannot give Plaintiff legal advice.  *Peper v. Dep't of Agric. of U.S.*, No. 04-cv-01382 ZLW, 2008 WL 2690707, at *3 (D. Colo. July 3, 2008).

(4)     The Motion for Leave to Take Deposition (Fed. R. Civ. P. 30(a)(2)(B) [Doc. 141]

        is **DENIED <u>without prejudice</u>**; and

(5)     The Motion for Extension of Time [Doc. 156] is **DENIED**.[11]


DATED:  February 28, 2022                          BY THE COURT:

                                                   Nina Y. Wang
                                                   United States Magistrate Judge

---

[11] Rule 72(a) of the Federal Rules of Civil Procedure provides that when a pretrial matter not dispositive of a party's claim or defense is referred to a Magistrate Judge to hear and decide, the Magistrate Judge must issue a written order stating the decision.  Within fourteen (14) days after service of a copy of this Order, any party may serve and file written objections with the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(a).  Failure to make any such objection will result in a waiver of the right to appeal the non-dispositive order.  *See Sinclair Wyo. Ref. Co. v. A & B Builders, Ltd.* 989 F.3d 747, 782 (10th Cir. 2021) (firm waiver rule applies to non-dispositive orders); *but see Morales-Fernandez v. INS,* 418 F.3d 1116, 1119, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review, such as when a "*pro se* litigant has not been informed of the time period for objecting and the consequences of failing to object").